Stephen J. Tully, SBN 112390
 (stully@garrett-tully.com)
Efren A. Compeán, SBN 119658
 (ecompean@garrett-tully.com)
Trang T. Tran, SBN 204481
 (ttrang@garrett-tully.com)
John L. Lin, SBN 191266
 (jlin@garrett-tully.com)
GARRETT & TULLY, P.C.
225 S. Lake Ave., Suite 1400
Pasadena, California 91101-4869
(626) 577-9500  Fax (626) 577-0813

Attorneys for Defendant Singer Lewak Greenbaum
& Goldstein, LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURI S. BATWIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OCCAM NETWORKS, INC., ROBERT I. HOWARD-ANDERSON; CHRISTOPHER B. FARRALL; HOWARD BAILY; STEVEN M. KRAUSZ; ROBERT B. ABBOTT; ROBERT E. BYLIN; THOMAS E. PARDUN; KENNETH R. COLE; BRIAN STORM; PRICEWATERHOUSECOOPERS, LLP; SINGER, LEWAK, GREENBAUM & GOLDSTEIN, LLP; THOMAS WEISEL PARTNERS, LLC; U.S. VENTURE PARTNERS, AND NORWEST VENTURE PARTNERS,<br><br>Defendants. | CASE NO. 2:07-cv-07-02750-CAS (SHx)<br>[Honorable Christina A. Snyder]<br><br>**DEFENDANT SINGER LEWAK GREENBAUM & GOLDSTEIN, LLP'S SUPPLEMENTAL BRIEF IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Defendant Singer Lewak Greenbaum & Goldstein, LLP ("SLGG") respectfully submits this Supplemental Brief in Opposition to Plaintiff's Motion for Class Certification.

## I. INTRODUCTION

As the Court is aware, SLGG is the lone remaining defendant in this action. SLGG only faces a Section 11 Claim, and the Section 11 Claim arises solely from a November 7, 2006 Secondary Public Offering ("SPO") of Occam shares. As PriceWaterhouseCoopers LLP ("PWC") discussed in its Partial Opposition to Class Certification to which SLGG filed a joinder, the Section 11 class should be limited to those who can establish a fundamental element of a Section 11 claim – specifically those who bought Occam shares in the actual SPO – and should not include those who purchased Occam stock after the SPO.

To establish a Section 11 claim, a plaintiff must show that the shares he or she purchased were originally issued pursuant to the allegedly defective registration statement. A purchaser of shares of company stock in the actual offering would meet that test. Although those who purchase after the actual offering but who could trace the issuance of their shares back to the defective registration statement can sue in theory, courts strictly apply the tracing requirement and routinely find that after-market purchasers of shares after a non-initial public offering cannot assert Section 11 claims. Where, as here, millions of shares of company stock already were trading in the public markets prior to the SPO, the determination of whether an after-market purchaser's stock was issued under the SPO would be highly individualized (if not impossible) such that the individualized tracing determination required by Section 11 for after-market purchasers would overwhelm any questions common to the class.

Lead Plaintiff cannot dispute that the tracing requirement leads to a highly individualized determination, so instead Lead Plaintiff first asserts that excluding after-market purchasers of Occam shares somehow unfairly deprives such purchasers of the opportunity to establish their Section claims. However, class certification under Federal Rule of Civil Procedure 23 concerns itself with whether a class action is the appropriate vehicle for asserting claims, not whether an individual plaintiff may assert a claim. An after-market purchaser of Occam shares still has the opportunity to establish that his

38676.wpd

2

Case No. 2:07-cv-02750-CAS (SHx)
SLGG'S OPP. TO PLAINTIFF'S MTN. FOR CLASS CERT.

acquired stock was issued under the SPO (nothing prevents him or her from bringing an individual Section 11 claim if he can properly plead tracing). However, a class action simply is not the vehicle to afford him that opportunity.

Lead Plaintiff then argues in essence that, like damages issues in Section 10(b)(5) claims, the Court can defer the determination of tracing to a claims administrator. However, unlike scienter issues in Section 10(b)(5) claims which do not hinge upon a plaintiff's actions, the tracing requirement under Section 11 claims does. Furthermore, deferring the determination of tracing to a claims administrator does not make such a determination any less individualized. If the Court were not to exclude after-market purchasers of Occam shares from the class, then that claims administrator would be overwhelmed by individual tracing determinations in contravention of Rule 23(b) requiring the commonality of questions of law and fact. Thus, the Section 11 class should be limited to only those who purchased shares from an underwriter in the actual November 2006 offering.

## II.     ARGUMENT

In order to certify a class for adjudication, a plaintiff must satisfy the requirements of Rule 23(a). Rule 23(a) squarely places the burden on a plaintiff in a putative class action to prove the following factors: (1) that the class is so numerous that joinder of all members is impractical; (2) that there are questions of law or fact *common* to the class; (3) that the claims or defenses of the representatives parties must be typical of the claims or defense of the class; and (4) that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4); *see also In re Eagle Computer Sec. Litig.*, 1986 U.S. Dist. LEXIS 27629, *16 (N.D. Cal. 1986) (restating Rule 23(b) requirements regarding proposed Section 11 class); *Doniger v. Pac. NW Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977) (party seeking certification bears burden of proof).

If a plaintiff can meet the requirements of Rule 23(a), then the next inquiry is whether the class action is "maintainable" under Rule 23(b). *In re Eagle Computer Sec.*

*Litig.*, 1986 U.S. Dist. LEXIS 27629 at *20. In this lawsuit, Lead Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This predominance requirement of Rule 23(b) is demanding, and "tests whether [a] proposed [class is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). This analysis often necessitates a preview into the case at bar. *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d. Cir. 2006); *see also Dukes v. Wal-Mart, Inc.* 509 F.3d 1168, 1178 n.2 (9th Cir. 2007) (courts must consider evidence that goes to the requirements of Rule 23, even if the evidence also relates to the underlying merits).

As PWC discussed in its Partial Opposition to Class Certification to which SLGG filed a joinder, whether or not the class as proposed by Lead Plaintiff is sufficiently cohesive depends upon whether Section 11's "tracing" requirement is a question of law or fact common to all members. It was PWC's position prior to its settlement, and it is SLGG's position, that Section 11's requirement as to after-market purchasers of Occam shares that they establish that their shares came from the SPO is a highly individualized determination which would outweigh all common questions of fact and law. Courts have excluded from class purchasers that did not buy their stock on the day of a non-initial public offering directly from an underwriter of participating dealer on this basis. *In re Initial Public Offering Securities Litigation*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004); *In re Quarterdeck Office Sys. Inc., Sec. Litig.*, 1993 U.S. Dist. LEXIS 19006 at *7 (C.D. Cal. Sept. 30 1993). Therefore, as discussed further below, SLGG respectfully submits that the Court should certify a Section 11 class that includes only those who purchased Occam stock from an underwriter in the November 2006 public offering.

38676.wpd

4

Case No. 2:07-cv-02750-CAS (SHx)
SLGG'S OPP. TO PLAINTIFF'S MTN. FOR CLASS CERT.

### A. To The Extent That Plaintiff Still Seeks Certification Of Shareholders Who Acquired Occam Shares Prior To November 7, 2006, The Proposed Class Is Patently Overbroad Because Only The Section 11 Claim Remains

As the Court is aware, SLGG is the lone remaining defendant in this action. SLGG only faces a Section 11 Claim, and the Section 11 Claim arises solely from a November 7, 2006 Secondary Public Offering ("SPO") of Occam shares. In its Reply to Singer, Lewak, Greenbaum & Goldstein, LLP's Joinder in Opposition to Motion for Class Certification, Lead Plaintiff opposed the creation of a subclass for Rule 11 claimants. (Reply Br. at 3:21-5:6). In its Supplemental Brief in Support of Motion for Class Certification, Lead Plaintiff does not indicate that it has withdrawn its opposition to the creation of a subclass for Rule 11 claimants, and indeed, reiterates that the Court has certified a Section 10(b)(5) class and is still seeking to certify an "overlapping" class of shareholders for violations of Section 11. (Supp. Br. at 1:5-13). Thus, Lead Plaintiff apparently still seeks to certify one class of all purchasers of the stock of Occam Networks, Inc. from April 24, 2004 to October 15, 2007. Given that there is no Section 10(b)(5) claim remaining, Lead Plaintiff's proposed class is patently overbroad in that it encompasses claimants who would have no cause of action against SLGG, namely those purchases of Occam Stock prior to November 7, 2006. Because SLGG is the sole remaining defendant, any class certified should exclude those who acquired or purchased Occam stock prior to the SPO.

### B. The Court Should Limit Class Certification Of The Remaining Section 11 Claim To Those Who Purchased Shares In The November 2006 Offering And Exclude After-Market Purchasers

Although PWC had previously briefed the issue of Section 11's tracing requirement, the significance of the tracing requirement as to class certification cannot be overemphasized. A plaintiff bringing a Section 11 claim must plead and prove that he or she purchased stock issued pursuant to a defective registration statement. 15 U.S.C. §§

38676.wpd

5

Case No. 2:07-cv-02750-CAS (SHx)
SLGG'S OPP. TO PLAINTIFF'S MTN. FOR CLASS CERT.

77f(a), 77k(a); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 872 (N.D. Cal. 1986). A plaintiff who purchased shares exclusively in the after-market can obtain relief under Section 11 only if he or she can "trace" the shares back to the governing defective registration statement. *In re IPO Sec. Litig.*, 227 F.R.D. at 117 (citing *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003)). This "tracing" of shares occurs when a plaintiff proves a direct chain of title, or demonstrates that no other shares of stock were traded in the after-market, such that all shares must have been issued pursuant to the registration statement. *Lorber v. Beebe*, 407 F. Supp. 279, 287 (S.D.N.Y. 1976). Where identical shares are traded in the market after a public offering, a plaintiff who purchased shares in the after-market must establish that his or her shares were issued pursuant to a defective registration statement for purposes of pursuing a Section 11 claim. *McFarland v. Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1981).

The plaintiff who is required to prove tracing under Section 11 carries a heavy burden. For example, in *McFarland*, Section 11 relief was not available to an after-market purchaser who bought shares less than one month after the issuer's public offering, because "Section 11 remedies cover only shares newly issued under the registration statement." *Id.* at 641-42 ("If plaintiff is to state a cause of action under Section 11, he must allege that he purchased new stock. Alleging or proving that the stock, purchased in the open market, might have been issued pursuant to the registration statement does not meet this requirement."); *see also Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 273 n.7 (S.D.N.Y. 1984) (observing that "[t]he open-market purchaser . . . must be able to trace his particular securities to the registration statement when it covered additional securities of an outstanding class. If the purchaser bought identical securities already being traded on the open market, he must look elsewhere for relief") (quotation marks and citations omitted).

Because tracing must be established with absolute certainty and with individualized proof where identical shares are traded in the after-market, courts have determined that Section 11 claims based on secondary stock offerings are particularly

unsuited for class treatment. In *In re Initial Public Offering Securities Litigation*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004), the court refused to certify a Section 11 class that included individuals who purchased their shares when other untraceable shares were in the market. *Id*. at 120. The court observed that "[t]racing may be established either through proof of a direct chain of title from the original offering to the ultimate owner . . . or through proof that the owner bought her shares in a market containing only shares issued pursuant to the allegedly defective registration statement." *Id* at 117-18. The court found that it is "virtually impossible" for individuals who purchased their shares at a time when other untraceable shares were in the market to trace their shares to a registration statement. *Id*. at 118. The court concluded that if such purchasers were permitted to be in the class, the "resulting inquiry would fragment the class action into myriad mini-trials on the subject of tracing." *Id*. at 118; *see In re Quarterdeck Office Sys. Inc., Sec. Litig.*, 1993 U.S. Dist. LEXIS 19006 at *7 (C.D. Cal. Sept. 30 1993) (refusing to certify a class of Section 11 claimants even where 97% of the shares in the market were issued pursuant to the registration statement at issue). Courts uniformly interpret Section 11 as requiring more than a mere showing that plaintiff's stock "might" have come from the relevant offering: rather, courts absolutely compel a showing that plaintiff's stock "must" have come from the relevant offering. *In re Quarterdeck*, 1993 U.S. Dist. LEXIS 19006 at *8.

In this case, it is undisputed that there were millions of shares of Occam common stock being traded in the market at the time of the November 2006 secondary stock offerings. Up to and around the time that Lead Plaintiff alleges that the Class Period began, Occam stock traded on NASDAQ's Over-The-Counter market. (Pl. Mot. for Class Cert. at 2). On October 5, 2006, Occam announced that its stock would begin trading on the NASDAQ Global Market. (Pl. Mot. For Class Cert at 5.) Eight days later, on October 13, Occam filed its final amendment to a registration statement for a public stock offering to take place on November 2, 2006. (*Id*.) The registration statement became effective on November 7, and the sale of 5.25 million shares pursuant to the

38676.wpd

7

Case No. 2:07-cv-02750-CAS (SHx)
SLGG'S OPP. TO PLAINTIFF'S MTN. FOR CLASS CERT.

statement occurred. Occam currently has 20.42 million shares outstanding. (http://finance.yahoo.com/q/ks?s=OCNW) Because there were millions of shares being traded prior to the secondary offering, it would be impossible for individuals who purchased shares following that offering to trace them back to the prevailing registration statement. And even if it were possible, such tracing would require individualized proof related to each purchase from each purchaser, potentially requiring an endless series of mini-trials on the issue of tracing along.

In a strikingly similar case, the United States District Court for the District of Arizona very recently declined to certify a Section 11 class that included after-market purchasers, and "limit[ed] plaintiffs' proposed class to exclude Section 11 claims by any person who did not purchase directly in the [SPO]." *Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145 (D. Ariz. Jul. 17, 2009). In *Tsirekidze*, the court, confronted with a proposed class of persons who purchased or otherwise acquired defendant's securities "between February 9, 2007 and November 14, 2007, as well as those who purchased or otherwise acquired [those] securities in [a Secondary Public Offering on May 24, 2007]," acknowledged that "[t]racing shares purchased in the after-market to a particular [secondary offering] requires a difficult, indeed sometimes impossible, individual showing of proof, particularly where a company has made more than one offering." 2009 U.S. Dist. LEXIS 61145, *22.

Furthermore, the Ninth Circuit in *Hertzberg v. Dignity Partners, Inc.*, 191 F. 3d 1076, 1090 (9th Cir. 199), an opinion to which Lead Plaintiff cites in support for its interpretation of Section 11, recognized the difficulty of tracing shares in non-initial public offerings:

> The limitation on "any person" is that he or she must have purchased "such security." Clearly, *this limitation only means that the person must have purchased a security under that, rather than some other, registration statement.* While *it might present a problem of proof in a case in which a stock was issued under more than one statement*, the

only Dignity stock ever sold to the public was pursuant to the allegedly misleading registration statement at issue in this case.

*Hertzberg v. Dignity Partners, Inc.*, 191 F. 3d 1076, 1080 (1999) (emphasis added). As with the matter before the United States District Court for the District of Arizona in *Tsirekidze*, and unlike the matter in *Hertzberg*, SLGG's purported liability under Section 11 is based upon a Secondary Public Offering conducted while there were millions of traded market shares already in existence. If all after-market purchasers were included as requested by Lead Plaintiff, it would be inevitable that the individualized tracing determination required by Section 11 for after-market purchasers would overwhelm any questions common to the class.

### 1. The Pertinent Issue In Rule 23(B) Determinations Is Whether Common Facts Predominate, Not Whether An Individual May Have Standing To Assert A Section 11 Claim

Rather than deny that the tracing determination required by Section 11 for after-market purchasers is highly individualized, Lead Plaintiff instead asserts that the plain language of Section 11 does not preclude after-market purchasers from seeking relief under Section 11. (Supp. Brief at 4:5-5:7). And, as after-market purchasers may seek relief under Section 11, it would be improper according to Lead Plaintiff to exclude such purchasers from a Section 11 class without providing them an opportunity to trace their shares. (Supp. Brief at 3:24-4:4; 9:11-13). However, at issue before the Court is not whether after-market purchasers may have standing to assert Section 11 claims, *but rather whether a class action under Rule 23(b)(3) is an appropriate vehicle for those claims*.

As discussed above, Rule 23(b)(3) is appropriate when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). The determination of whether an after-market purchaser of shares can trace those shares to those issued from a non-initial public offering is, by its nature, an individualized determination. Where millions of

shares had already been traded prior to the public offering, the "resulting inquiry would fragement the class action into myriad mini-trials on the subject of tracing." *In re Initial Public Offering Securities Litigation*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004). Thus, a class action is not the appropriate vehicle for an after-market purchaser of Occam shares to pursue a Section 11 claim against SLGG pursuant to Rule 23(b). The exclusion of an after-market purchaser from a Section 11 class does not mean that the after-market purchaser who can establish tracing has no recourse – nothing prevents that after-market purchaser from bringing an individual Section 11 claim. In other words, an after-market purchaser of Occam shares does have the opportunity to trace his or her shares to Occam's secondary offering, but just not as part of a class action.[1]

The cases cited by Lead Plaintiff for the proposition that "courts have repeatedly held that tracing difficulties are not a proper basis for denial of class certification, or even for limiting the class" are of little assistance to Lead Plaintiff, especially now that the sole remaining claim at issue is a Section 11 claim. (See Pl. Supp. Brief at 5:8-9). Except for one, the plaintiffs in the cases cited by Lead Plaintiff sought class certification for non-Section 11 claims in addition to Section 11 claims. *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 46 (D.D.C. 2006) (class certification for Section 11 and 12 claims); *In re Dynergy, Inc. Sec. Litig.*, 226 F.R.D. 263, 273-75 (S.D. Tex. 2004) (class certification for Section 10(b)(5) and 11 claims); *In re Direct Gen. Corp. Sec. Litig.*

---

[1] Likewise, Lead Plaintiff's attempt to minimize the significance *Tsirekidze* both mischaracterizes the holding of *Tsirekidze* and fails to distinguish it from the matter before the Court. (Pl. Supp. Br. at 6 n.2). The *Tsirekidze* court did not hold "as a matter of law that after-market purchasers do not have standing because they cannot trace their shares to the registration statement." Instead, the court stated that "[i]ndividual questions regarding standing to assert a Section 11 claim would . . . overwhelm the questions common to the class if all after-market purchasers are included." *Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145 (D. Ariz. Jul. 17, 2009. No determination was made as to whether after-market purchasers individually had standing to assert a Section 11 claim. Instead, the court simply held that a determination as to whether each after-market purchaser had standing would outweigh common questions.

No. 3:05-0077, 2006 U.S. Dist. Tenn. Aug. 8, 2006 (same). Where there is a commingled class consisting of non-Section 11 and Section 11 claims, then the members who would solely have a non-Section 11 claim and the members who would have both a non-Section 11 and Section 11 claim could predominate in number, and thus common questions may predominate over individualized tracing determinations. However, there remains only the Section 11 claim before the Court in this matter. As to one non-commingled case cited, at issue was an initial public offering such that the only market shares were ones issued from that offering. *In re Turkcell Iletism Hizmetler, A.S. Litig.*, 209 F.R.D. 353, 359 (S.D.N.Y. 2002).

### 2. The Burden Of Tracing Falls Upon Plaintiff And Does Not Become Any Less Individualized By Deferring Tracing Determinations To A Claim Administrator

Apparently citing to *In re Cooper Cos. Sec. Litig.*, 245 F.R.D. 238 (C.D. Cal. 2009), Lead Plaintiff asserts that the "evidence required to satisfy this 'tracing' requirement is the same evidence the § 10(b) class members will produce to demonstrate their right to recover from the common fund." *Compare* Pl. Reply Br. at 7:21-8:12 *with* Pl. Supp. Br. at 6:1-3. In essence, Lead Plaintiff argues that the Court should not exclude after-market purchasers of Occam stock because the Court may defer issues of tracing to a claims administrator. However, such an argument requires that the Court ignore the substantial legal significance of a distinction between the matter before the Court and the matter in *In re Cooper*, specifically that, unlike Section 10(b)(5) claims, tracing is heavily dependent upon actions by plaintiffs.

As conceded by Lead Plaintiff, *In re Cooper* addressed the class certification of a Section 10(b)(5) claim. Because a Section 10(b)(5) claim was before the court in *In re Cooper*, and as Lead Plaintiff concedes by citing to the following language from *In re Cooper*, "[t]he evidence of scienter [requisite for a Section 10(b)(5) claim] will be identical for all class members, no matter when they purchased or sold Cooper shares within the proposed Class Period. The same evidence applies equally to each class member; proving or disproving scienter *does not hinge on any individual plaintiff's*

38676.wpd

11

Case No. 2:07-cv-02750-CAS (SHx)
SLGG'S OPP. TO PLAINTIFF'S MTN. FOR CLASS CERT.

*actions, but on Defendants' actions.*" *In re Cooper Cos. Sec. Litig.*. 245 F.R.D. 238, 640 (C.D. Cal. 2009) (emphasis added). However, the tracing requirement under Section 11 ***does*** hinge on individual actions, namely whether the potential class member who purchased shares in the after-market can establish that his or her shares were issued pursuant to a defective registration statement. *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 641-642 (N.D. Cal. 1981). Thus, the individualized issues of "timing or sales and purchases, or standing to file suit," *do have primacy* in determining whether after-market purchases should be excluded from a class for Section 11 claims. And as the determination of whether an after-market purchaser can trace his shares from those issued in the SPO is a individualized determination, common issues do not predominate over individual ones.[2]

That a claims administrator could review evidence of tracing, as argued by Lead Plaintiff, is inapposite to whether the claims administrator *should* review individualized evidence of tracing. What cannot be repeated enough is that "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b). If the Court were not to exclude after-market purchasers of Occam shares from the class, then that claims administrator

---

[2] Lead Plaintiff also spends an inordinate amount of discussion asserting that "any potential tracing issues is in fact one that focuses on the issue of damages," and therefore cannot preclude class certification. Noticeably absent from Lead Plaintiff's characterization of tracing as an issue of damages is any citation to authority. *See* Pl. Reply Br. at 7:11-12; Pl. Supp. Br. at 7:18-20. Furthermore, in the cases cited by Lead Plaintiff for the proposition that damage issues do not preclude certification, the plaintiffs did not assert Section 11 claims. *Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, No. CV 07-2536 PSG (PLAx), 2009 U.S. Dist. LEXIS 71653 (C.D. Cal. Aug. 12, 2009) (Section 10 claims); *In re LDK Solar Sec. Litig.*, 255 F.R.D., 519, 529 (N.D. Cal. 2009) (same); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009)(same). Likewise, the apparent corollary to Lead Plaintiff's assertion that tracing is a damages issue – namely that damages are presumed under Section 11(e) such that it is defendant's burden to establish affirmative defenses to damages and therefor SLGG has the burden to establish tracing – is simply wrong. Compare Pl. Supp. Br. at 6:17-7:15 with SLGG Supp. Opp. Br. *supra* at 6:1-27.

would be overwhelmed by individual tracing determinations in contravention of Rule 23(b).  *See also Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145 (D. Ariz. Jul. 17, 2009); *In re Initial Public Offering Securities Litigation*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004); *In re Quarterdeck Office Sys. Inc., Sec. Litig.*, 1993 U.S. Dist. LEXIS 19006 at *7 (C.D. Cal. Sept. 30 1993).  In other words, the deferment of tracing determinations to a claims administrator does not make tracing determinations any less individualized, nor does it change the balance between common questions and individualized issues.

## III.  CONCLUSION

Due to the tracing requirement of Section 11, individual questions regarding standing would overwhelm the questions common to the class if all after-market purchasers are included.  Lead Plaintiff's attempts to detract the Court from this conclusion, first by claiming that exclusion of after-market purchasers would be unfairly deprived of an opportunity to assert a Section 11 claim, and then by claiming that the issue could be deferred to a claims administrator, do not directly address issues of commonality.  In essence, Lead Plaintiff is requesting that this Court selectively apply the requirement of commonality, finding commonality with regards to the material upon which purchasers of Occam shares relied but ignoring commonality as to tracing determinations required by Section 11.  This is simply untenable.  Thus, SLGG respectfully requests that this Court certifies a Section 11 class that includes only those who purchased Occam stock from an underwriter in the November 2006 public offering.

DATED: October 16, 2009           GARRETT & TULLY, P.C.

                                  /S/
                                  ──────────────────────────
                                  JOHN L. LIN
                                  Attorneys for Defendant Singer Lewak
                                  Greenbaum & Goldstein, LLP

**PROOF OF SERVICE**
*Batwin v. Occam Networks, Inc., et al.*
USDC Case No. 2:07-cv-02750-CAS (SHx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Los Angeles in the office of a member of the bar of this court at whose direction the service was made. My business address is 225 S. Lake Avenue, Suite 1400, Pasadena, California 91101-4869.

On October 16, 2009, I served the following document(s): **DEFENDANT SINGER LEWAK GREENBAUM & GOLDSTEIN, LLP'S SUPPLEMENTAL BRIEF IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

☒ **BY E-MAIL or ELECTRONIC TRANSMISSION.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 16, 2009, at Pasadena, California.

/S/
Yvonne L. Blum

**GARRETT & TULLY**
A PROFESSIONAL CORPORATION

38676.wpd

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 16, 2009.

                                                    /S/
                                      Yvonne L. Blum

38676.wpd

**ELECTRONIC SERVICE LIST**
*Batwin v. Occam Networks, Inc., et al.*
USDC Case No. 2:07-cv-02750-CAS (SHx)

| Attorney | Email |
|---|---|
| Andrew J. Brown, Esq. | andrewb@csgrr.com, e_file_sd@csgrr.com, hectorm@csgrr.com |
| Angela Mikels, Esq. | adunning@cooley.com |
| Charles E. Tillage, Esq. | ctillage@hayesdavis.com, atorres@hayesscott.com |
| Christopher J. Sundermeier, Esq. | csundermeier@cooley.com, jmcintosh@cooley.com |
| Crystal Mothershead Gaudette, Esq. | cgaudette@wsgr.com |
| Dorothy L. Fernandez, Esq. | dfernandez@mofo.com |
| Gregory Lewis Watts, Esq. | gwatts@wsgr.com, lbeltran@wsgr.com |
| Jeffrey P. Campisi, Esq. | jcampisi@kaplanfox.com |
| Jerome F. Birn, Jr., Esq. | jbirn@wsgr.com |
| Joel B. Strauss, Esq. | jstrauss@kaplanfox.com |
| Jordan Eth, Esq. | jeth@mofo.com, nurbina@mofo.com |
| Katherine L. Henderson, Esq. | khenderson@wsgr.com |
| Laurence D. King, Esq. | lking@kaplanfox.com, agutierrez@kaplanfox.com, kweiland@kaplanfox.com, mgallagher@kaplanfox.com |
| Lori S. Brody, Esq. | lbrody@kaplanfox.com, agutierrez@kaplanfox.com, kweiland@kaplanfox.com, mgallagher@kaplanfox.com |
| Mark C. Gardy, Esq. | mgardy@gardylaw.com |
| Matthew I. Alpert, Esq. | malpert@csgrr.com |
| Philip T. Besirof, Esq. | pbesirof@mofo.com, vsmith@mofo.com |
| Sally Berens, Esq. | sberens@gibsondunn.com, cvifnati@gibsondunn.com |
| Scott A. Fink, Esq. | sfink@gibsondunn.com, evignati@gibsondunn.com |
| Stephen A. Scott, Esq. | sscott@hayesdavis.com |

GARRETT & TULLY
A PROFESSIONAL CORPORATION

38676.wpd

1    Timothy W. Blakely, Esq.      tblakely@mofo.com, kbobovski@mofo.com

2    Tricia L. McCormick, Esq.      triaiam@csgrr.com

**MANUAL NOTICE LIST**

Frederic S. Fox
Kaplan Fox & Kilsheimer
850 Third Ave., 14 Floor
New York, NY 10022

38676.wpd

**TABLE OF CONTENTS**

I. <u>INTRODUCTION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. <u>ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. <u>To The Extent That Plaintiff Still Seeks Certification Of Shareholders Who Acquired Occam Shares Prior To November 7, 2006, The Proposed Class Is Patently Overbroad Because Only The Section 11 Claim Remains</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. <u>The Court Should Limit Class Certification Of The Remaining Section 11 Claim To Those Who Purchased Shares In The November 2006 Offering And Exclude After-Market Purchasers</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1. <u>The Pertinent Issue In Rule 23(B) Determinations Is Whether Common Facts Predominate, Not Whether An Individual May Have Standing To Assert A Section 11 Claim</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2. <u>The Burden Of Tracing Falls Upon Plaintiff And Does Not Become Any Less Individualized By Deferring Tracing Determinations To A Claim Administrator</u> . . . . . . . 11

III. <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

FEDERAL CASES

Abbey v. Computer Memories, Inc., 634 F. Supp. 870, 872 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . 6

Amchem Prods. v. Windsor, 521 U.S. 591, 623-24 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Doniger v. Pac. NW Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . 3

Dukes v. Wal-Mart, Inc. 509 F.3d 1168, 1178 n.2 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 4

Freeland v. Iridium World Commc'ns, Ltd., 233 F.R.D. 40, 46 (D.D.C. 2006) . . . . . . . . . . . . . . 10

Hertzberg v. Dignity Partners, Inc., 191 F. 3d 1076, 1090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

In re Connetics Corp. Sec. Litig., 257 F.R.D. 572, 578 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . 12

In re Cooper Cos. Sec. Litig., 245 F.R.D. 238 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . 11, 12

In re Direct Gen. Corp. Sec. Litig. No. 3:05-0077, 2006 U.S. Dist. Tenn. . . . . . . . . . . . . . . . . . 10

In re Dynergy, Inc. Sec. Litig., 226 F.R.D. 263, 273-75 (S.D. Tex. 2004) . . . . . . . . . . . . . . . . . 10

In re Initial Public Offering Securities Litigation, 227 F.R.D. 65, 120 (S.D.N.Y. 2004) . . . . 4, 7, 10,
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re IPO Sec. Litig., 471 F.3d 24, 41 (2d. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re LDK Solar Sec. Litig., 255 F.R.D., 519, 529 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . 12

In re Turkcell Iletism Hizmetler, A.S. Litig., 209 F.R.D. 353, 359 (S.D.N.Y. 2002) . . . . . . . . . . 11

Klein v. Computer Devices, Inc., 591 F. Supp. 270, 273 n.7 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . 6

Lorber v. Beebe, 407 F. Supp. 279, 287 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McFarland v. Memorex Corp., 493 F. Supp. 631 (N.D. Cal. 1981) . . . . . . . . . . . . . . . . . . . . 6, 12

FEDERAL STATUTES

15 U.S.C. §§ 77f(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FEDERAL RULES

Federal Rule of Civil Procedure 23(a)(1)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 12